# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No.04-1899

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Larry Flenoid, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

Submitted: January 11, 2005
Filed: July 29, 2005

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

SMITH, Circuit Judge.

Larry Flenoid was found guilty by a jury of being a felon in possession of a firearm and escape. Flenoid was sentenced to life in prison[1] for felon in possession and five years for escape, to run concurrently. On appeal, Flenoid argues that he should be resentenced in accordance with *Blakely v. Washington,* 542 U.S. 296 (2004) and that the district court erred in admitting testimony of the shooting. We disagree and affirm.

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

I. *Background*

In May 2000, while residing in a halfway house pending release from federal prison, Flenoid went to see his girlfriend, Ursula Page, on a weekend pass. When Page was late picking him up, Flenoid became enraged, then punched, verbally abused, and threatened to kill her. Page took the threat seriously and sought refuge with her brother-in-law, Rickey Forehand.

About three a.m., Flenoid appeared at Forehand's residence. Fearful, Page ran upstairs to hide under a bed with her niece. Page heard a gunshot downstairs. Flenoid had shot and killed Forehand with a .357 magnum revolver. After the shooting, Flenoid found Page and threatened her, pointing the gun at her niece. Still armed, Flenoid dragged Page out of the residence and put Page in her car. As Flenoid began to drive away, Page attempted to jump from the car. Flenoid grabbed Page's hand, dragging her while driving the car for about 150 feet.

About that time, a St. Louis County patrolman arrived on the scene. When the officer arrived at Forehand's house, he observed Page's car leave the area and Page attempt to jump from it. The patrolman pursued the car until it crashed into a utility pole a short time later. The officer commanded Flenoid to exit Page's car. Instead, Flenoid attempted to free the car from the pole and when he failed, Flenoid fled into a wooded area nearby.

Flenoid was not apprehended for more than three years. In the meantime, investigators recovered Flenoid's bloody fingerprint and palm print on a door and a wall of the basement where Forehand was killed. Police also recovered Flenoid's .357 revolver which contained five spent shell casings. Fragments of five bullets were retrieved from the basement of Forehand's house and from Forehand's body.

Flenoid was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and also for escape. Prior to trial, Flenoid filed several

motions *in limine*, one of which sought to exclude what he considered unfairly prejudicial testimony regarding the bloody fingerprints found in the basement of Forehand's home. The district court denied the motion, but did restrict the Government's ability to introduce evidence related to Forehand's murder to such evidence as was necessary to prove Flenoid possessed the .357 firearm. A jury found Flenoid guilty of both felon in possession of a firearm and escape.

At sentencing, the district court determined that Flenoid was an armed career criminal[2] pursuant to 18 U.S.C. § 924(e) on April 9, 2004. As an armed career criminal, Flenoid was subject to the sentencing range of fifteen years to life provided in § 924(e). The district court sentenced Flenoid pursuant to United States Sentencing Guideline (U.S.S.G.) § 2K2.1, which is applicable to violations of 18 U.S.C. § 922(g)(1). Section 2K1.2 (c)(1)(B) provides a cross-reference to the most analogous homicide guideline when death results from the defendant's use or possession of a firearm. Based on the trial evidence of Flenoid's murder of Forehand, the district court found that § 2A1.1, the guideline for first degree murder, was most applicable. Section 2A1.1 requires a sentence of life in prison. Flenoid objected to the pre-sentence report because the sentence recommendation recited facts related to Forehand's murder not determined by a jury.

## II. *Discussion*

### A. *Admission of Testimony*

A district court's decision to admit evidence over a defendant's objection that the evidence is unduly prejudicial would be reviewed for abuse of discretion. *United States v. Walrath*, 324 F.3d 966, 970 (8th Cir. 2003). Flenoid failed to object to the admission of the evidence from the shooting after having filed a motion *in limine*. The government argues that "[a] motion *in limine* is not a substitute for an objection and

---

[2]Flenoid had seven prior convictions for violent felonies or drug trafficking crimes.

does not alone preserve error for review." *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001). We disagree.

In 2000, Federal Rule of Evidence 103(a) was amended. In *United States v. Malik*, 345 F.3d 999 (8th Cir. 2003), we were faced with a situation similar to the one presented here. In *Malik*, the defendant moved *in limine* to exclude evidence. When his motion was denied the defendant did not object further. We held that "'[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal.' Fed. R. Evid. 103(a) (2000)." *Id.* at 1001. We indicated that a motion *in limine* is an objection. We believe that *Malik* correctly explains Rule 103(a). We therefore hold that Flenoid properly objected to the admission of the evidence at trial.

However, we hold that the admitted evidence was not unfairly prejudicial. The district court, in denying Flenoid's motion *in limine*, restricted the government's introduction of evidence related to the murder to only what was necessary to prove Flenoid possessed the .357 firearm. The court's instruction sufficiently circumscribed the testimony. The admitted evidence was highly probative of Flenoid's possession of a prohibited firearm because it established that he used it. Flenoid's use of the firearm to commit murder does not alter its probative value on the crucial issue of possession. The district court did not abuse its discretion.

B. *Sentencing*

Flenoid argues that the district court erred in sentencing him to life in prison pursuant to U.S.S.G. § 2K2.1(c)(1)(B), the first-degree murder cross-reference, because the jury made no first-degree murder findings. However, Flenoid forfeited a claim of error based on the Sixth Amendment or the mandatory Guidelines by his "failure to make timely assertion of the right." *United States v. Olano*, 507 U.S. 725, 731 (1993) (internal quotation omitted). His claim will only be reviewed for plain error. *Id.*; Fed. R. Crim. P. 52(b).

In reviewing Flenoid's claim under the plain error standard, we consider whether Flenoid has shown a reasonable probability, based on the record as a whole, that but for the district court's error in applying the mandatory Sentencing Guidelines, he would have received a more favorable sentence. *United States v. Pirani*, 406 F.3d 543, 551 (8th Cir. 2005) (en banc). We conclude upon review of this record that Flenoid has not met his burden. The district court found by a preponderance of the evidence that Flenoid’s "shooting of Ricky Forehand was committed in the perpetration of kidnapping of Ursula Page and/or the burglary of the Forehand residence and so constitutes a first degree murder for the purposes of Sentencing Guideline cross reference." (S. Tr. at 14). The court's principal comment on the sentencing of life imprisonment was as follows:

> Based upon the serious nature of the instant offense that involved the defendant's escape from federal custody and his possession of a revolver that he used to kill the victim, and in view of the defendant's extensive criminal history, the following sentence would seem to address the sentencing objectives of punishment, general deterrence, and incapacitation.

(S. Tr. at 45–46). We find nothing in the comments or any other part of the record suggesting a reasonable probability that the district court would have imposed a more lenient sentence under the advisory guideline scheme announced in *Booker*. Therefore, we affirm the judgment of the district court.

______________________________